RECEIVED

JUL 2 5 2006

ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE-OPELOUSAS DIVISION

| | |
|---|---|
| EDDIE J. FLUGENCE | CIVIL ACTION NO. 05-1099 |
| VS. | MAGISTRATE JUDGE METHVIN |
| COMMISSIONER OF SOCIAL SECURITY | BY CONSENT OF THE PARTIES |

## MEMORANDUM RULING

Before the court is an appeal of the Commissioner's finding of non-disability. Considering the administrative record, the briefs of the parties, and the applicable law, the Commissioner's decision is **REVERSED**.

### *Background*

Born on July 26, 1960, Eddie J. Flugence ("Flugence") is a 45-year-old claimant with a high school education in special education classes. (Tr. 74; 377-78). Flugence has past work experience as a construction worker and roughneck. (Tr. 31). In 1991, Flugence was in an automobile accident that left him with severe back injuries. Testing in September of 1993 showed a left-sided disk herniation. Flugence underwent a lumbar diskectomy in October 1993. An MRI taken in March 1994 showed a recurrent disc herniation at L5-S1, and Flugence underwent a second discketomy in September 1994. Flugence has not worked since July 1991.

Flugence has filed several applications for benefits. Flugence filed his first application for supplemental security income benefits on July 6, 1994, alleging disability as of July 1, 1991 due to back pain. The application was denied initially and on reconsideration, and ALJ Ragona rendered an unfavorable decision on July 23, 1997, finding that Flugence had the residual

functional capacity to perform the full range of light work. (Tr. 319-32). This application was not appealed.

Flugence protectively filed a second application for supplemental security income benefits on October 17, 1997, alleging disability as of July 21, 1991 due to constant back pain. (Tr. 69). The application was denied initially and on reconsideration. In a decision dated September 29, 2000, ALJ Torres determined that Flugence is not disabled because he retains the residual functional capacity to do light work with certain restrictions. In so finding, ALJ Torres found that the doctrine of *res judicata* barred reconsideration of ALJ Ragona's decision dated July 23, 1997. A request for review was denied by the Appeals Council. (Tr. 7-9). This suit was then timely filed.

Flugence has since filed additional applications for benefits, however, these applications are not before the undersigned for review at this time.[1]

*Assignment of Errors*

Flugence alleges three errors on appeal: (1) ALJ Torres failed to conclude that Flugence is disabled pursuant to Listing 12.05(C) in light of his own findings; (2) ALJ Torres erred in

---

[1] The record shows that, in his brief, Flugence also contends that a subsequent decision, issued by ALJ Molinar on July 22, 2003 and based on a claim for benefits filed on October 14, 1997, is also erroneous. At the time that he filed the instant complaint, Flugence believed that both decisions – the instant decision and the July 22, 2003 decision – were on appeal before the Appeals Council. However, after filing the instant complaint, counsel for Flugence received notice that the July 22, 2003 complaint had been remanded by the Appeals Council to ALJ Molinar. Therefore, in a letter to the undersigned dated June 9, 2006, counsel for Flugence states that the only claims before the court at this time are those raised in the application filed on October 17, 1997 and which are the subject of the ALJ's unfavorable decision of September 29, 2000. See letter from William Ziegler to the undersigned magistrate judge dated June 9, 2006, attached hereto as Exhibit "A."

applying *res judicata* to ALJ Ragona's decision dated July 23, 1997; and (3) ALJ Torres erred in assessing Flugence's residual functional capacity.

## *Standard of Review*

The court's review is restricted under 42 U.S.C. §405(g) to two inquiries: (1) whether the Commissioner's decision is supported by substantial evidence in the record; and (2) whether the decision comports with relevant legal standards. Carey v. Apfel, 230 F.3d 131, 136 (5th Cir. 2000); Anthony v. Sullivan, 954 F.2d 289, 292 (5th Cir.1992); Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Carey, 230 F.3d at 136; Anthony, 954 F.2d at 292; Carrier v. Sullivan, 944 F.2d 243, 245 (5th Cir. 1991). The court may not reweigh the evidence in the record, nor substitute its judgment for that of the Commissioner, even if the preponderance of the evidence does not support the Commissioner's conclusion. Carey, 230 F.3d at 136; Johnson v. Bowen, 864 F.2d 340, 343 (5th Cir.1988). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the decision. Johnson, 864 F.2d at 343.

## *ALJ's Findings*

In determining whether a claimant is capable of performing substantial gainful activity, the Secretary uses a five-step sequential procedure set forth in 20 C.F.R. §404.1520(b)-(f) (1992):

1. If a person is engaged in substantial gainful activity, he will not be found disabled regardless of the medical findings.

2. A person who does not have a "severe impairment" will not be found to be disabled.

4

3. A person who meets the criteria in the list of impairments in Appendix 1 of the regulations will be considered disabled without consideration of vocational factors.

4. If a person can still perform his past work, he is not disabled.

5. If a person's impairment prevents him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed.

In the instant case, ALJ Torres determined at Step 5 that Flugence has mild degenerative changes in the lumbar area, mild mental retardation, and status-post disc excision, but that he retains the residual functional capacity to do light work with the following restrictions: (1) can only occasionally climb, balance, stoop, kneel, crouch, and crawl; (2) cannot twist his back suddenly; and (3) cannot work with severely vibrating machinery. (Tr. 36, 309). ALJ Torres concluded that jobs with these restrictions exist in significant numbers in the local and national economies. (Tr. 37).

After a review of the entire record and the briefs of the parties, and pursuant to 42 U.S.C. §405(g), the undersigned concludes that the ALJ's findings and conclusions are not supported by substantial evidence in the record.

*** Findings and Conclusions ***

1. **Listing 12.05(C)**

Flugence contends that the ALJ erred in failing to find that he is disabled due to mental retardation pursuant to Listing 12.05(C). In order to qualify for disability under this listing, a

claimant must show two things: 1) valid IQ scores between 60 and 70; and 2) a "physical or other mental impairment imposing additional and significant work-related limitations of function."[2]

### a.     First Requirement of Listing 12.05(C)

With respect to IQ score, the record supports the ALJ's finding that in March 2000, when Flugence was tested by Dr. Henry Lagarde at the request of Disability Determinations Services, Flugence obtained a full-scale IQ score of 62, a verbal score of 65, and a performance score of 65. (Tr. 261-63). Dr. Lagarde opined that these scores reflect an intellectual capability in the mild mental retardation range. (Id.). These scores are consistent with intelligence testing of Flugence when he was 16 years old. At that time, Flugence obtained a full scale IQ score of 55, a verbal score of 65, and a performance score of 54. (Tr. 267-69). Based on these scores, Flugence was assessed as being "educationally retarded." Further test results from that time period show that Flugence failed the oral reading test at the first grade level, his grade equivalent at age 16 in spelling was 1.4, and he could perform simple addition and subtraction but could not add three numbers with two digits each. Furthermore, Flugence scored a grade level of 2.3 on

---

[2] Section 12.05(C) provides in pertinent part:
    §12.05 *Mental Retardation and Autism*: Mental retardation refers to a significantly subaverage general intellectual functioning with deficits in adaptive behavior initially manifested during the developmental period (before age 22).
    * * * The required level of severity for this disorder is met when the requirements in A, B, C or D are satisfied. * * *
    C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing additional and significant work-related limitation of function; ....

20 C.F.R. Pt. 404, Subpt. P, App. 1 (1997).

the Peabody Individual Achievement Test, giving him an age equivalency of 7 years and 7 months (at 16 years of age). (Tr. 253-58).

The Commissioner argues that Flugence has no "disabling deficits" despite his low IQ because he has high adaptive functioning. Specifically, the Commissioner notes that, in 2000, Dr. Lagarde reported that Flugence can bathe and dress himself (Tr. 261); tie his shoes; manage money (Tr. 276); read his name; do simple math; and has a special education certificate from high school and three months training in the oilfield industry. (Tr. 336).

Listing 12.05(C) requires that adaptive functioning be considered in assessing the claimant's IQ. "Adaptive functions" include "cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for [one's] grooming and hygiene, using telephones and directories, and using a post office." See 20 C.F.R. pt 404, subpt. P, app. 1 § 12.00(C)(1), cited in Arce v. Barnhart, 2006 WL 1765899, *1 (5th Cir. 2006); see also Morris v. Dretke, 413 F.3d 484, 487 (5th Cir. 2005) (quoting the lists of adaptive skills used by the American Association on Mental Retardation and American Psychiatric Association, which largely comport with the list provided in §12(C)(1)).

In the instant case, the record shows that, although he can bathe and dress himself, these tasks can take a significant amount of time, depending on the amount of back pain that Flugence is experiencing that day. Furthermore, the record shows that, although he knows how to cook, Flugence does not do so because of his pain. Furthermore, Flugence cannot write his name and can only do simple math at a very slow pace. Thus, because of both his physical and mental impairments, Flugence does not have consistently reliable adaptive functioning.

Considering the foregoing, the undersigned concludes that Flugence's test results and the findings of Dr. Lagarde clearly establish that Flugence functions intellectually in the mild mental retardation range and clearly satisfies the first requirement of Listing 12.05(C). Furthermore, the ALJ concluded as much, finding that Flugence has the severe impairments of mild degenerative changes, *mild mental retardation*, and status-post disc excision. The issue, then, is whether Flugence satisfies the second requirement of Listing 12.05(C), that is, whether he has a "physical or other mental impairment imposing additional and significant work-related limitations of function.

### b. Second Requirement of Listing 12.05(C)

It is well-settled that, in order to satisfy the second requirement of Listing 12.05(C), the impairment at issue need not be disabling in itself:

> If the plaintiff's physical impairment were required to be independently disabling, §12.05(C) would be rendered meaningless. Therefore, something less than a preclusion from any substantial gainful employment must apply.

Branham v. Heckler, 775 F.2d 1271, 1273 (4th Cir.1985).

Section 12.00(A) defines "significant work-related limitation of function" as a "severe impairment:"

> For paragraph C, we will assess the degree of functional limitation the additional impairment(s) imposes to determine if it significantly limits your physical or mental ability to do work activities, i.e., is a 'severe' impairment(s), as defined in §§ 404.1520(c) and 416.920(c). If the additional impairment(s) does not cause limitations that are 'severe' as defined by § 404.1520(c) and 416.920(c), we will not find that the additional impairment(s) imposes 'an additional and significant work-related limitation of function' even if you are unable to do your past work because of the unique features of that work. . .

20 C.F.R. Pt. 404, Subpt. P, App. 1 §12.00A (1997).

The definition of "severe impairment" in the Fifth Circuit is well-settled: "an impairment can be considered as not severe only if it is a slight abnormality which has such minimal effects on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." Estran v. Heckler, 745 F.2d 340, 341 (5th Cir.1984); Stone v. Heckler, 752 F.2d 1099 (5th Cir.1985); Anthony v. Sullivan, 954 F.2d 289, 293 (5th Cir.1992).

Turning to the facts of this case, the record shows that Flugence has a history of back problems, apparently beginning after he was involved in an automobile accident in 1991. Despite two back surgeries, in 1993 and 1994, Flugence has continued to complain of severe back pain. An MRI of Flugence's lumbosacral spine taken on December 8, 1999 showed degenerative disc disease at multiple levels, worse at the L5-S2 level, with a large central and left paracentral disc protrusion, and significant narrowing of bilateral neural foramina at this level, more on the left than on the right. (Tr. 249). The ALJ appeared to acknowledge the severity of Flugence's back impairment when he found that Flugence's back impairment is severe and prohibits him from doing manual labor. Furthermore, Flugence testified at this administrative hearing that his back pain is so severe that it often makes him cry, requires him to take medications that make him drowsy, and prohibits him from engaging in many activities that require him to walk ore stand a lot. (Tr. 301-05).

Considering the foregoing, the undersigned concludes that Flugence's back impairment is a "physical or other mental impairment imposing additional and significant work-related limitations of function, and, therefore, that he satisfied the second requirement of Listing 12.05(C). Therefore, the undersigned concludes that the ALJ erred in failing to conclude that

Flugence is not disabled pursuant to Listing 12.05(C). Because the undersigned concludes that Flugence satisfies the requirements of Listing 12.05(C), it is unnecessary to address his residual functional capacity claim.

## 2. **Res Judicata**

Now that it is established that Flugence satisfies the requirements of Listing 12.05(C), the undersigned must determine the onset date for purposes of determining the date that Flugence's benefits begin. Necessary to this determination is a discussion of the doctrine of *res judicata*.

Flugence contends that ALJ Torres erred in concluding that *res judicata* bars reconsideration of ALJ Ragona's decision dated July 23, 1997. This issue is significant, because if the doctrine of *res judicata* bars consideration of the previous decision rendered by ALJ Ragona on July 23, 1997, Flugence cannot be awarded benefits before the date of the instant application, i.e., before October 17, 1997. On the other hand, if *res judicata* does not bar reconsideration of the July 23, 1997 decision, then Flugence may be awarded benefits retroactive to the onset date alleged in the first application, i.e., July 1, 1991. See, e.g., Green v. Heckler, 803 F.2d 528 (9th Cir.1986) (when claimant reapplies for disability benefits after an earlier denial, that earlier denial precludes claimant from arguing that he was disabled during the period covered by the earlier decision; furthermore, it creates presumption that claimant was able to work beyond the date of the earlier decision), citing Miller v. Heckler, 770 F.2d 845, 848 (9th Cir.1985) & Taylor v. Heckler, 765 F.2d 872, 875 (9th Cir.1985).

The doctrine of *res judicata*, both administrative and judicial, consists of two elements: (1) claim preclusion, which refers to the preclusive effect of a judgment in barring re-litigation of the same causes of action; and (2) issue preclusion, or collateral estoppel, which forecloses re-

litigation of all matters that were actually and necessarily determined in a prior suit. Purter v. Heckler, 771 F.2d 682 (3rd Cir.1985). Four factors are relevant in determining whether a prior decision is *res judicata*: (1) whether the acts complained of and the demand for relief are the same as in the prior case; (2) whether the theory of recovery is the same; (3) whether the necessary witnesses and documents are the same; and (4) whether the material facts alleged are the same. Thus, in determining the applicability of the doctrine of *res judicata*, the ALJ is required to ascertain whether the claims under consideration are the same as those presented in a prior application.

In the instant case, the record shows that ALJ Ragona's decision of July 23, 1997 does not reference any claim for benefits based on mental retardation. In fact, ALJ Ragona specifically found that Flugence has a high school education, which suggests that Flugence had no learning problems. Flugence's test results from both 1997 and March 2000 clearly belie this finding. Thus, the submission of Flugence's school records and IQ test results to ALJ Torres preclude the application of *res judicata*, because ALJ Torres's decision evaluated claims that were not under consideration by ALJ Ragona. Moreover, the record shows that Flugence was unrepresented at his first hearing before ALJ Ragona. Finally, counsel stated on the record at Flugence's hearing on the instant application that the new evidence from Flugence's school, containing test scores and other educational data, justified the re-opening of ALJ Ragona's 1997 Decision. Given this factor, the fact that Flugence is mildly mentally retarded, and considering all of the circumstances surrounding the two applications, the undersigned concludes that ALJ Torres erred in concluding that *res judicata* bars consideration of the issues raised in Flugence's first application for benefits.

Thus, given that Flugence last worked in July 1991 and that his school records and IQ test results show that Flugence has been mentally retarded since at least 1977, the undersigned concludes that the evidence supports a finding of disability since the original alleged onset date of July 1, 1991. Considering the foregoing, the undersigned concludes that Flugence should be awarded benefits consistent with an onset date of July 1, 1991.

## *Conclusion*

Considering the foregoing, it is recommend that the Commissioner's decision be **REVERSED** and that Flugence be awarded benefits consistent with an onset date of July 1, 1991.

Any judgment entered herewith will be a "final judgment" for purposes of the Equal Access to Justice Act (EAJA). See, Richard v. Sullivan, 955 F.2d 354 (5th Cir. 1992) and Shalala v. Schaefer, 509 U.S. 292 (1993).

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have ten (10) business days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within ten (10) days after receipt of a copy of any objections or responses to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of receipt, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal**

12

conclusions accepted by the District Court, except upon grounds of plain error. See <u>Douglass v. United Services Automobile Association</u>, 79 F.3d 1415 (5th Cir. 1996).

Signed at Lafayette, Louisiana on July 25, 2006.

Mildred E. Methvin
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)